

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, vs. FELIS LUSIANO ROMO, Defendant/Movant. | Cause No. CR 13-113-BLG-SPW<br>CV 17-085-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

This case comes before the Court on Defendant/Movant Romo's motion to vacate, set aside, or correct the sentence, pursuant to 28 U.S.C. § 2255. Romo is a federal prisoner proceeding pro se.

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (*"Nicolas"*) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But "it is the duty of the

1

court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

Romo initially appeared in this Court on a complaint charging that he was a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). *See* Compl. (Doc. 1) at 3; Minutes (Doc. 3). On December 5, 2013, he was indicted on that charge. *See* Indictment (Doc. 9) at 1-2. Attorney Lance Lundvall was appointed to represent him. *See* Order (Doc. 8).

On January 16, 2014, Romo was indicted on one count of conspiracy to possess 50 grams or more of a substance containing methamphetamine, with intent to distribute it, a violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1); one count of the substantive offense, a violation of 21 U.S.C. § 841(a)(1) (Count 2); and one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) (Count 3). *See* Superseding Indictment (Doc. 14) at 2-4.

Counsel filed a motion to suppress a firearm and other evidence obtained when police entered a camper occupied by Romo. The motion was denied. *See* Mot. and Br. in Supp. (Docs. 20, 21); Resp. Br. (Doc. 23); Reply (Doc. 26); Order (Doc. 30).

Trial commenced on April 23, 2014. After hearing about four hours of testimony, the jury found Romo guilty on all three counts of the Superseding Indictment. *See* Minutes (Docs. 49, 51); Verdict (Doc. 52) at 1-3.

On October 17, 2014, Romo was sentenced to serve a total of 188 months in prison, to be followed by a five-year term of supervised release. *See* Minutes (Doc. 76); Judgment (Doc. 77) at 2-3. His sentence was later reduced to 162 months under Amendments 782 and 788 to the Sentencing Guidelines. *See* Am. Judgment (Doc. 111) at 1.

Romo appealed. He challenged the denial of his motion to suppress and his criminal history category under the advisory sentencing guidelines. The Court of Appeals affirmed his conviction and sentence on June 14, 2016. *See* Mem. (Doc. 100) at 4. Romo filed a petition for writ of *certiorari*. It was denied on October 17, 2016. *See* Clerk Letter (Doc. 105).

Romo's conviction became final on October 17, 2016. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on June 19, 2017. *See* 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

Romo's claims are reorganized here, but all are addressed.

### A. Conflict of Interest

Romo contends that counsel had a conflict of interest because he was an

3

"active State Judge and an active State prosecutor" and so "had a conflict of interest in making sure that any person alleged to be involved with drug use and/or distribution in the State of Montana would be prosecuted to the extent of the law." Mot. § 2255 (Doc. 113) at 7; Br. in Supp. (Doc. 114) at 4-6.

To determine the extent of counsel's obligations in these other roles, the Court ordered him to file an affidavit. He complied on January 22, 2018. Romo had an opportunity to respond to the affidavit but did not do so. *See* Order (Doc. 116) at 1-2; Counsel Aff. (Doc. 118) at 1-4. Romo claims that counsel's occasional service as a judge and prosecutor created a conflict of interest because it requires counsel to enforce the criminal laws of the State. But the purpose of a criminal defense attorney is to protect the rights of individual defendants, not to block enforcement of criminal laws. Mere occasional service as a judge or prosecutor, especially in a jurisdiction, like Montana, with sparsely populated areas and few lawyers, does not disqualify counsel from criminal defense cases.

Counsel's service might, however, affect the way Romo's claims are evaluated. Ordinarily, a claim of ineffective assistance of counsel is adjudicated under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). A § 2255 movant must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different," *id.* at 694. An allegation that counsel had a conflict of interest is decided under a different standard. A movant must show only that counsel had "a division of loyalties that affected counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). The standards of *Strickland* are lowered, and the following test applies:

> [I]n order to be entitled to a hearing on a conflict of interest Sixth Amendment claim, a habeas petitioner has the burden of alleging specific facts which, if true, would indicate that: (1) an attorney's relationship to a third party influenced the attorney not to pursue a particular litigation strategy, and (2) the foregone litigation strategy would have been a viable alternative.

*United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003). In sum, the *Strickland* test asks whether counsel's performance or strategy was unreasonable, regardless of whether other reasonable strategies were also available. The *Mickens/Rodrigues* test asks whether other reasonable strategies were available and, if so, whether counsel's conflict of interest influenced his choice of one strategy over another.

Romo alleges that counsel did not pursue the arguments addressed in the following three claims for relief. In an abundance of caution, the Court will take the conflict of interest claim into account by considering both whether counsel's performance was reasonable and whether Romo has identified a viable alternative approach that counsel could have taken but did not.

**B. Kyle Lester Warrant**

5

Romo contends that counsel should have argued (whether at trial or in the motion to suppress) that "the target of the search warrant," Kyle Lester, had already been arrested before police entered the camper where Romo was found. *See* Mot. § 2255 (Doc. 113) at 4; Br. in Supp. (Doc. 114) at 1.

In fact, counsel did make that argument. *See, e.g.*, Br. on Mot. to Suppress (Doc. 21) at 2, 5; Reply Br. (Doc. 26) at 2-4; Suppression Hr'g Tr. (Doc. 90) at 18:4-20, 24:15-21. Counsel also solicited evidence tending to undermine the credibility of the officers who participated in the arrests and searches at the Lester property. *See, e.g.*, Suppression Hr'g Tr. at 19:11-22:14, 23:9-20, 24:9-13, 26:5-19 (demonstrating that agent's report failed to include information important to his testimony); *id.* at 76:19-77:12 (questioning significance of "Feo" tattoo). He showed Romo was not specifically threatening. *See, e.g., id.* at 27:25-29:12, 53:16-54:14. He also attempted to challenge the warrant application's specificity. *See id.* at 72:12-75:11. Counsel's performance was not unreasonable, and there is no indication his performance was affected by a conflict of interest.

Nor has Romo identified a viable alternative approach counsel could have taken. Officers arrived at the Lester property not with search warrants but with arrest warrants for four people: Kyle Lester, Keith Lester, Robert Ferrell, and Jennie Britt. Two teams of officers entered the Lester property. One team approached a blue and white trailer and located several people whom they began to

6

identify and question. One of those people was Kyle Lester. Another team approached a red trailer but did not find anyone there. Then an officer saw movement in a camper. The officers believed the person inside could have been Keith Lester or Ferrell or Britt and/or could have posed a danger to the officers. *See, e.g.*, Suppression Hr'g Tr. at 46:13-23, 48:6-49:13 (Kirkland); *id.* at 64:1-19, 66:2-8 (Nedens). Although either Kirkland or Nedens may have been the case agent who accompanied the prosecutor throughout the hearing, at least one of them did not hear Grayson's testimony. *See* Suppression Hr'g Tr. at 5:9-17.

Romo claims the facts were found because counsel failed to object to "leading" questions by the Court at the suppression hearing. *See* Mot. § 2255 (Doc. 113) at 4 (citing Suppression Hr'g Tr. (Doc. 90) at 9:8-18:20, 31:2-24, 38:13-20, 38:7-42:4). There was no basis for an objection. "The court may examine a witness regardless of who calls the witness." Fed. R. Evid. 614(b). And the questions did not prejudice Romo. On the contrary, they were intended to clarify whether Romo's position had any possible merit. *See, e.g.*, Suppression Hr'g Tr. at 41:15-17 ("But you can't tell me that 'we were still looking for one of these people, because we knew we hadn't found them yet'?"); *id.* at 41:23-42:1 ("Did you know for a fact when you went to the Prowler and ordered Mr. Romo out, that you had not located all the people for whom you had an arrest warrant?").

Counsel lost the suppression motion because the facts did not support it, not

7

because of any defect or hesitation in his own approach to it. Romo has not alleged facts sufficient to support an inference either that counsel's performance was unreasonable. He also has not identified a viable alternative to counsel's approach to the suppression issue. This claim is denied.

### C. *Franks* Violation

Romo also claims there was no Lake County arrest warrant in his name and he does not have "Feo" tattooed on his back. He claims the officer who asserted these facts in a search warrant application lied and, as a result, the warrant issued to search the camper was void and its fruits should have been excluded. *See* Mot. § 2255 at 5; Br. in Supp. at 2-4.

A warrant based on an affidavit containing a false statement is void (1) if the false statement was made recklessly or intentionally, and (2) if the affidavit, excluding the false statement, does not establish probable cause for the search. *See, e.g., Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Kleinman*, 859 F.3d 825, 840 (9th Cir. 2017); *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).

First, to show the officer lied, Romo points to a Lake County arrest warrant dated October 10, 2014, over a year after his arrest, nearly six months after his trial, and just seven days before his federal sentencing hearing. *See* Ex. A (Doc. 114 at 7). The existence of this warrant has little to no bearing on whether another

8

Lake County warrant for Romo's arrest could be found in NCIC a year earlier.[1] There is some indication the warrant might not have been intended for Romo, *see* Presentence Report ¶ 72, but a case of mistaken identity is not a case of perjury. Romo alleges no fact supporting an inference that the officer's statement was false, much less "recklessly or intentionally" so.

Second, the facts established at the suppression hearing show the allegedly false statement could not have been material. The search warrant was aimed at the camper. The officers knocked on the door of the camper for ten minutes before Romo finally opened it, and Romo initially refused to step out and away from it. These two facts tended to suggest he was shielding its interior from police observation. In addition, a couple of weeks before the search, authorities received two mutually corroborating statements that a Hispanic male was temporarily residing on the Lester property. Romo was male, Hispanic, and evidently temporarily residing on the Lester property. Moreover, the camper was on the Lesters' property, the Lesters and their property were known to be connected with drug trafficking, and the officers saw drug paraphernalia in plain view in another residence on the property. All of these facts, taken together, supported an inference that Romo's presence in the camper indicated drug activity in the

---

[1] The warrant does list a 2011 case number. It seems likely it was issued so that the State could obtain Romo's presence after his federal sentencing. But no decision is required on that point.

camper. *See* Suppression Hr'g Tr. at 67:22-68:22. There was probable cause to search the camper for evidence of drug activity, regardless of who Romo actually was, whether there was a warrant for his arrest, and whether he had "Feo" tattooed on his back. There was no realistic prospect of suppressing the firearm or other evidence based on Romo's allegedly unlawful detention.

Finally, there was nothing to exclude as the "fruit" of Romo's allegedly unlawful detention. He did not make a statement. No evidence was found on his person; trial witnesses testified they knew Romo as "Feo," but no one testified about a tattoo. Romo himself was not evidence or a statement that could have been suppressed. "[H]e cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest." *See United States v. Crews*, 445 U.S. 463, 474 (1980); *United States v. Crawford*, 372 F.3d 1048, 1053-54 (9th Cir. 2004) (en banc) (noting that a causal connection must be shown between illegal conduct and evidence sought to be suppressed).

Romo has not alleged facts sufficient to support an inference either that counsel's performance was unreasonable under *Strickland* or that a *Franks* hearing was a viable alternative. This claim is denied.

### D. Appellate Issues

Romo had new counsel on appeal. *See* Order (Docs. 86, 87). He does not claim she had a conflict of interest. The *Strickland* standards apply. *See Smith v.*

10

*Robbins*, 528 U.S. 259, 285 (2000).

Romo alleges there were serious discrepancies in trial witnesses' testimony and asserts that this issue should have been raised on appeal. *See* Mot. § 2255 at 8 ("Ground Four"); Br. in Supp. at 6. But such discrepancies are common. Juries decide which witnesses and which portions of witnesses' testimony to believe. They also decide whether any witnesses or portions of testimony are worthy of belief beyond reasonable doubt. So long as there is sufficient evidence to support a finding, beyond reasonable doubt, on each element of the crime, *see Jackson v. Virginia*, 443 U.S. 307, 324 (1979), there is no objection to be made. The evidence was sufficient to support Romo's conviction.

Neither prong of the *Strickland* test is met. This claim is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).

None of Romo's claims meets even the relatively low threshold required for a COA. He has not identified anything unreasonable about counsel's performance. Assuming, for the sake of argument, that his allegation of a conflict of interest supports application of *Mickens v. Taylor* in addition to *Strickland*, he has not identified any viable alternative strategy or tactic that counsel did not pursue. Counsel reasonably challenged the search of the Lesters' property, including the credibility of testifying witnesses, and there was no realistic factual or legal support for excluding Romo's discovery or arrest at the camper trailer. Romo's claim of ineffective assistance of appellate counsel (which does not rest on a conflict of interest claim) suggests only that counsel should have challenged the sufficiency of the evidence, which plainly supported the conviction. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Romo's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 113, 114) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Romo files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 17-85-BLG-SPW are terminated and shall close the civil file by entering

judgment in favor of the United States and against Romo.

DATED this 7th day of August, 2018.

Susan P. Watters
United States District Court